**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DISTRICT**

FRANK MORRIS HOWELL                                                           PLAINTIFF

v.                                        No. 4:13CV00673-DPM-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                               DEFENDANT

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge D. P. Marshall

Jr.  A party to this dispute may object to this recommendation in writing.  An objection must be

specific and state the factual and/or legal basis for the objection.  An objection to a factual finding

must identify the finding and the evidence supporting the objection.  Objections must be filed with

the Clerk of the Court no later than fourteen days from the date of this recommendation.[1]  The

objecting party must serve the opposing party with a copy of an objection.  Failing to object within

fourteen days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall

may adopt the recommended disposition without independently reviewing the record evidence.  An

objecting party who seeks to submit new, different, or additional evidence, or to obtain a hearing for

that purpose, must address the following matters as part of written objections: (1) why the record

before the magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate

judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right
to de novo review and to appeal magistrate judge's findings of fact).

Based on this submission, Judge Marshall will determine the need for a hearing.

### Recommended Disposition

Frank Morris Howell seeks judicial review of the denial of his application for disability insurance benefits.[3]  Mr. Howell's claim flows from his work helping with cleanup of the 2010 Gulf of Mexico oil spill.  From May 1, 2010, to October 25, 2010, Mr. Howell operated various boats as part of this effort, exposing him to oil and oil dispersants.[4,5]

**The Commissioner's decision**.  After considering the application, the administrative law judge (ALJ) determined Mr. Howell has severe impairments in the form of environmental toxicity, pain in the left arm/shoulder and right hip, and tinnitus.[6]  However, the ALJ concluded he can work with certain limitations, to include his past work as an armored car business owner, a boat captain, a private investigator, and a firearms instructor.[7]  Because a person who can do his past work is not disabled,[8] the ALJ denied the application.

The Appeals Council denied a request for review,[9] making the ALJ's decision the final decision of the Commissioner.[10]  Mr. Howell filed this case to challenge the decision.[11]  In reviewing

---

[3]SSA record at p. 138 (alleging disability beginning Oct. 27, 2010).

[4]SSA record at p. 168 (claiming disability due to toxic chemical and heavy metal poisoning).

[5]*Id*. at p. 180 (explaining how he incurred his injuries).

[6]*Id*. at p. 12.

[7]*Id*. at pp. 14-18.

[8]20 C.F.R. § 404.1520(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[9]SSA record at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal

the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]

**Mr. Howell's allegations**.  Mr. Howell challenges just about every aspect of the ALJ's decision: record development, consideration of evidence detracting from the decision, evaluation of credibility, weight given to medical opinions, and determination about ability to work.  Primarily, he maintains the ALJ failed to consider the residual effects of heavy metal poisoning and symptoms of detoxification.  He contends substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Mr. Howell can work within the ALJ's parameters, to include his past work.  The ALJ determined that Mr. Howell can work at all exertional levels with the following limitations: (1) frequently climb ramps and stairs; (2) occasionally climb ladders, ropes, and scaffolds; (3) frequently operate foot controls with right leg; (4) occasionally reach, to include overhead reaching, with left arm; (5) avoid moderate exposure to fumes, odors, dust, gases and poorly ventilated areas; (6) avoid concentrated exposure to chemicals; and (7) no work involving fine hearing.[14]  The ALJ's determination must be supported by medical evidence;

---

only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]Docket entry # 7.

[14]SSA record at p. 14.

Mr. Howell's subjective allegations are not enough to prove he is disabled.[15]

**What the medical evidence shows**.  The remote medical evidence indicates Mr. Howell's right hip was replaced several years ago.[16]  Mr. Howell's work history shows the hip replacement doesn't prevent him from doing his past work because he worked for many years after the hip replacement.  A reasonable mind would accept that history as adequate to show Mr. Howell can work within the ALJ's parameters.

The more recent medical evidence — treatment records beginning at the time Mr. Howell began the oil-spill cleanup work — shows Mr. Howell was injured in a motor vehicle accident. After the accident, he complained about ringing in his left ear, and stiffness and pain in his neck and left shoulder.[17]  According to the neurologist who treated the injuries, Mr. Howell needs shoulder surgery to repair tears in the left rotator cuff; the neurologist reported a 6% permanent injury.[18]  Mr. Howell contends the ALJ disregarded the neurologist's opinion, claiming the ALJ simply threw it out.  But in reality, the ALJ observed that Mr. Howell sought no additional treatment for his injuries. He continued to work on the cleanup effort, despite the injuries.  To the extent the injuries cause residual impairment, the ALJ's limitations accommodate impairment by limiting the use of the left arm and eliminating work requiring fine hearing.  A reasonable mind would accept the evidence as adequate to show Mr. Howell can work within the ALJ's parameters, because the ALJ accounted for the injuries from the motor vehicle accident.

Exposure to oil and oil dispersants is the most compelling part of Mr. Howell's claim.

---

[15]42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. § 404.1508.

[16]SSA record at p. 254 (reporting right hip replacement in 2006).

[17]*Id*. at p. 240.

[18]*Id* at p. 296.

According to Mr. Howell, he and boat crew members became ill in early October 2010.[19]  He said, at first, he thought he had the flu, but months later, he learned he had chemical poisoning.[20]  He attributes his symptoms to Corexit,[21] a dispersant that changes the chemical and physical properties of oil by breaking it oil into small droplets which are more easily mixed with water, thus diluting the oil and allowing it to be dispersed.  Mr. Howell maintains he was splashed with oil and Corexit, and breathed toxic fumes from those substances, during cleanup efforts.[22]

Mr. Howell's primary care physician (PCP) referred him to a neurologist who was testing patients with high levels of oil-related chemicals in the bloodstream.[23]  In March 2011, toxicology testing confirmed the presence of two chemicals used in Corexit in Mr. Howell's bloodstream: ethylbenzene and xylene.[24]  Hair sample testing showed the presence of cadmium.[25]  However, the presence of cadmium likely flowed from cigarette smoking because Mr. Howell smoked for most of his adult life[26]and cigarette smoking is the primary source of cadmium intake in humans.[27]  Mr.

---

[19]*Id*. at p. 43.

[20]*Id*. at pp. 44-46.

[21]*Id*. at p. 46 & 230.

[22]*Id*. at p. 180.

[23]*Id*. at p. 231.

[24]*Id*. at p. 282.

[25]*Id*. at p. 285.

[26]*Id*. at p. 254 (reporting, at age 49, smoking two packs of cigarettes per day since high school).

[27]"Cigarette smoke is the most common source of exposure to cadmium. . . ."  See http://www.nih.gov/news/health/feb2012/nichd-08.htm, accessed September 8, 2014.

Howell's doctor diagnosed environmental toxicity.[28]

Humans exposed to Corexit may experience a variety of symptoms: eye, nose and throat irritation, headaches, dizziness, upset stomach, cough and shortness of breath.[29]  Mr. Howell complained primarily about coughing and flu like symptoms.[30]  Treatment for Corexit exposure depends on the nature of the exposure and degree of toxicity.  Mr. Howell's doctor prescribed a detoxification program consisting of nutrients, a detoxification diet, and detoxification supplements.[31]

Mr. Howell testified that he sees his doctor for followup treatment,[32] but the record reflects no followup treatment for environmental toxicity.  At Mr. Howell's request,[33] the ALJ held the record open, but Mr. Howell submitted no recent treatment records for environmental toxicity.  And to the extent Mr. Howell experiences coughing spells and periodic flu-like symptoms, the ALJ limited exposure to pulmonary irritants and chemicals that might aggravate Mr. Howell's symptoms.

According to the medical expert, Mr. Howell has no severe impairment.[34]  Mr. Howell complains the expert did not review evidence submitted after the hearing, but that evidence supports the medical expert's conclusion.  The new evidence consisted of treatment records for the motor-

---

[28]*Id*. at p. 280.

[29]These details are from the National Library of Medicine's online Toxicology Data Network; there are two forms of Corexit: 9500 and 9527.

[30]SSA record at pp. 49, 51, 57-58, 181, 183 & 199.

[31]*Id*. at p. 281.

[32]*Id*. at p. 47 (testifying that he has been seeing his doctor since March 23, 2011, and explaining his treatment regimen).

[33]*Id*. at p. 67.

[34]*Id*. at p. 291.

vehicle-accident injuries, lab work for hormone levels, and two visits to the PCP.[35]   Asking the medical expert to review that evidence would not have changed the ALJ's determination for the following reasons:  The neurologist who treated the motor-vehicle-injuries reported a 6% permanent injury, but Mr. Howell worked with his injuries.  The lab work reflects no impairment caused by hormone levels.  Mr. Howell complained to his PCP about flu-like symptoms and reported treatment for environmental toxicity, but the PCP described him as "looking well."[36]

Mr. Howell suggested the need for a mental status exam,  but he did not base his claim on mental impairment.  He took a psychotropic drug for a while to help him sleep when tinnitus interfered with sleeping, but that use does not implicate mental impairment or the need for a mental diagnostic exam.

**Vocational evidence**.  Mr. Howell has worked as an armored car business owner, a boat captain, a private investigator, and a firearms instructor.  The ALJ asked a vocational expert whether a person with Mr. Howell's impairments can do those jobs.[37]  The vocational expert testified that a person with such limitations can do those jobs.[38]  Although Mr. Howell maintains symptoms of environmental toxicity and side effects of detoxification prevent him from doing his former work, the lack of treatment undermines his claim.

Symptoms of environmental toxicity may have prevented Mr. Howell from working before and during detoxification, but no medical record shows his symptoms prevented him from working for twelve continuous months.  Only an impairment that lasts, or is expected to last, twelve

---

[35]*See id.* at pp. 295-320.

[36]*Id.* at pp. 310 & 313.

[37]*Id.* at p. 64.

[38]*Id.* at p. 65.

continuous months is disabling under social security law.[39]   To the extent he relies on the need for

a chemical-free diet for the remainder of his life, the diet indicates his symptoms can be controlled

with treatment.   "An impairment which can be controlled by treatment … is not considered

disabling."[40]

### Recommended Disposition

Viewed as a whole, substantial evidence supports the ALJ's decision.   The ALJ made no

legal error.   For these reasons, the undersigned magistrate judge recommends the Commissioner's

decision be affirmed and the Plaintiff's Complaint be dismissed with prejudice.

Dated this 8th day of September, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[39]*See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits).
*See also* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial
gainful activity by reason of any medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be expected to last for a continuous period
of not less than 12 months.").

[40]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).